# South and North Alabama Railroad Company *v.* Morris.

*Action for Damages for Killing Hog.*

1. *Presumption in favor of constitutionality of statute.*—When the constitutionality of a statute is assailed, the court will indulge the presumption of its constitutionality, until clearly convinced to the contrary; but, when part of a statute has been declared unconstitutional, this presumption will not be indulged in favor of the remaining portions.

2. *Statute partly unconstitutional.*—When part of a statute is unconstitutional, "if that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained."

3. *Limitation of action against railroad company, for injuries to stock.*—Although the first section of the act approved February 3d, 1877, entitled "An act to define and regulate the responsibility of railroads for damages to live

(13)

stock or cattle of any kind" (Code, § 1710), has been held unconstitutional, because it attempts to impose upon railroad corporations an absolute liability for stock or cattle killed or injured, without any inquiry into the question of negligence or other fault (*Zeigler v. S. & N. Ala. Railroad Co.*, 58 Ala. 594); yet the provision contained in the second section of said act, which declares that "all claims for damages shall be barred unless complaint is made within six months" from the time of the injury (Code, § 1711), may well stand without any connection with the first section ; and being an enactment of later date than the statute which imposed a limitation of sixty days (§ 1701), it is the statutory bar to actions against railroad companies for injuries to stock.

4. *Attorney' tax-fee, assessed as part of costs against unsuccessful appellant ; constitutionality of law.*—The sixth section of said act of February 3d, 1877, which requires a reasonable attorney's fee, not exceeding $20, to be assessed by the court, as a part of the costs, against every unsuccessful appellant in such actions (Code, § 1715), is unconstitutional and void, being violative of that equality and uniformity of rights and privileges which, by the fundamental principles of the constitution, State and Federal, are secured to all persons, and creating unequal and unjust discrimination against a particular class of litigants.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAMES Q. SMITH.

THOS. G. JONES, for appellant.—The main and controlling purpose of the statute having been declared unconstitutional in *Zeigler's case*, its remaining parts must share the same fate. It is apparent, on a just consideration of the statute, that all its parts were based and conditioned on the changed liability which the statute attempted—making railroad companies absolutely liable for injuries to live stock, instead of confining the liability to negligent injuries. The legislature has passed a series of acts on this subject ; and uniformly a short time is allowed for presentation of claims, where the liability is only for a negligent injury. The time for presenting claims is never changed, until the legislature attempts to change the liability. Is not the inference just, that the changed bar against claims was designed only to affect the changed liability? How can the court declare the legislature intended the six months limitation should be enforced, regardless of the liability for the injury, when it has uniformly fixed sixty days when it dealt with a liability which resulted only from negligence, and when the unconstitutionality of the first section of the act leaves the liability exactly where it stood prior to the passage of the present statute? The attorney's tax-fee is a penalty, clearly. It is given only "in suits brought under the provisions of the act"—that is, where the liability is absolute. There being no absolute liability, suits can not be maintained under the provisions of this act, but must rest on other statutes, or the common law. When the words, "under the provisions of this act" are used, it is not intended to signify the mere mode of suit, laid

down in some of the sections; but the suit in which the law provides an absolute liability. The fee is clearly conditioned on the absolute liability. All the sections were intended as parts of one harmonious whole, to effect a single purpose—to enforce an absolute liability. The foundation removed, there is nothing for other parts of the legal edifice to rest on. Cooley on Const. Lim. §§ 178–9. If the court doubts whether the legislature intended to enforce the separate parts, regardless of the unconstitutional portion of the statute, it must refuse to recognize any part of the statute as a law. The presumption is, that the legislature had *power to pass* the statute as a whole; but, when part has been adjudged void, it is no longer a question as to power to pass the remaining portions, but, if that be admitted, whether the legislature *intended to enforce* the remaining provisions when separated from the void parts of the statute. The presumption from its passage is, that the legislature intended the statute to operate as a whole. When it can not so operate, there is no presumption that it intended to enforce the separate parts. If anything, the presumption is the other way. Cooley Const. Lim. § 179, p. 197, and note.

Law is but the will of the legislature, constitutionally expressed. The court, in enforcing a law, must find *affirmatively* that the legislature so willed. If the court can not see beyond a doubt what the legislature willed, it can not enforce the statute. It is not logical to say, "it is doubtful whether the legislature intended the separate parts of this act to operate independently of the unconstitutional portion, and therefore they shall be enforced." This would be, not to found judgments upon a clear ascertainment of the legislative will, but upon doubts as to that will.

2. The statute is unconstitutional in several particulars. Section 26, Article 6 of the constitution, declares that, in all cases tried before justices of the peace, the right of appeal "shall be secured by law." Section 12 of the declaration of rights provides, that "the right of trial by jury shall remain inviolate." This statute intended not "to secure," but to prevent appeals. It aimed to hamper and restrain the right of jury trial; for the appeal is the only means of getting the jury trial, and what hampers or hinders the appeal necessarily strikes also at the right of jury trial. The right of jury trial can not be said to remain "inviolate," when an appeal is the only means of getting it; and when, in the particular case, that appeal is hampered by the peril of burdens and consequences, which, in no other conceivable case known to the law, can attach to any other suitor, in like circumstances, who demands his right of trial by jury.

If it be not unlawful to impose the onerous tax-fee as a consequence of failure on appeal, what prevents the legislature from fixing such heavy burdens in event of defeat as to deter from appeals altogether ?—*Greene v. Briggs*, 1 Curtis, 327. The statute is not maintainable as a regulation of the right of appeal. There is no equality between the parties to that appeal. The statute says to the appellant : 'If your opponent succeeds, you must pay an attorney's fee ; if you defeat him, you shall not recover any attorney's fee of him.' The fallacy of the argument, that the provisions of the law are not arbitrary or unequal, because, position of appellants being reversed, the stock-owner might be taxed with attorney's fees, lies in this—the law is unequal and partial, as to any *one* suit or appeal, unless *each* party, if successful *in that suit*, has equal right to have an attorney's fee taxed therein ; but, under the terms of the law, the successful appellant can never get the tax-fee ; and hence, the parties as to any *particular* suit or appeal are not, and can never be, on an equality in that suit. Equality, which the constitution demands for suitors before the court, must be in *each* case or appeal, as between them ; and can not be worked out, because the inequality on one of the suitors in the one *cause*, will be "set off" on the other suitor in *another* cause, or appeal, between them. This becomes plain, if we substitute other parties, in place of the operator of the road and the owner of the cattle ; say, for instance, baker and butcher. The head-note of a decision sustaining the statute would run about as follows : "A blacksmith sues a baker. If the blacksmith wins, he recovers *no cost* of the baker. If the baker wins, he recovers full costs of the blacksmith : *Held*, such law is not unconstitutional, and does not work unequally or partially in the actual suit between them ; because, had there been *another suit*, in which the baker were plaintiff, he could recover no costs of the blacksmith, though the latter might recover of him. "

Under the operation of this statute, justice is not administered " without *sale*, denial, or delay. "—Cooley's Con. Lim. § 362. The equality as to right of suit and defense—putting corporations and natural persons on like footing— declared by (section 12) Art. xiv of the constitution, is destroyed ; and if the operator of the road be a natural person, he is singled out, and made subject to a special rule which affects no one else in like circumstances. His equality before the law is destroyed.—Cooley's Con. Lim. §§ 391-393 ; *Wally v. Kennedy*, 2 Yerger, 554 ; *Waddell v. Vanzant*, 2 Yerger, 460 ; *Durkee v. City of Janesville*, 28 Wisconsin, 464 ; *Gordon v. Winchester Association*, 12 Bush, 110 ; *Loan Asso-*

*tion* v. *Topeka*, 20 Wallace, 655; Declaration of Rights, §§ 1, 11, 12, 14, 37. I insist that the whole act is void.

GEO. W. TOWNSEND, *contra*.

SOMERVILLE, J.—The appellee, Morris, in this action recovered judgment before a justice of the peace, against the appellant, for damages for the negligent killing of a hog by a railroad train, under the control of appellant's servants. Upon appeal to the Circuit Court, it was insisted, by plea of the railroad company, that the claim was barred, because it had not been presented in writing within sixty days after accrual, as required by section 1701 of the Code (1876). A demurrer to this plea was sustained, and judgment rendered for the plaintiff; and the court imposed an attorney's tax-fee of twenty dollars against the appellant, as part of the costs. These rulings of the Circuit Court are assigned for error.

The case is conceded to depend upon the constitutionality of certain sections of the "Act to define and regulate the responsibility of railroads for damages to live stock or cattle of any kind," approved February 3, 1877 (Sess. Acts 1876-7, p. 54), and now embraced in sections 1710–1716 of the Code.

In *Zeigler* v. *S. & N. Ala. R. R. Co.* (58 Ala. 594), this court pronounced the *first section* of this act, now comprised in section 1710 of the Code, to be unconstitutional, on the ground that it sought to impose an absolute and unconditional liability upon railroad companies, without regard to any question of legal wrong, fault or negligence on their part, and thus operated to deprive them of a hearing in court by that "due process of law" guarantied to all persons under section 7 of the Bill of Rights. It is urged by appellant's counsel, that the unconstitutionality of this section vitiates the whole act, and that the remaining parts of it are void also, and must fall with it.

Though the law has been differently declared in some of the States, a safer and sounder rule, as we think, has been adopted by this court—that the presumption of the constitutionality of a statute will be indulged, until the mind of the court is clearly convinced to the contrary.—*Zeigler* v. *S. & N. Ala. R. R. Co., supra; Sadler* v. *Langham*, 34 Ala. 311. Where, however, a part of any law has been held unconstitutional, the rule is different, and the same presumption will not be indulged in favor of the *remainder* of the act, that was allowable in support of the original statute, when primarily assailed.—*People* v. *Bell*, 46 N. Y. 68; *State·v. Dornbaugh*, 20 Ohio (N. S.), 173.

We find the principle stated in Cooley on Constitutional

[South and North Alabama Railroad Co. v. Morris.]

Limitations, as follows: "Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, *depending on each other*, oper-erating together for the same purpose, or otherwise so connected together in meaning, that it can not be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall."—Cooley's Const. Lim. 177–8; *Com. v. Hitchings*, 5 Gray, 485. The true test seems to be, "that "if, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."—*Ib.* 178.

Applying these tests to the statute under consideration, we do not think that the fact of the *first section* (Code, § 1701) being void vitiates the remainder of the act. They are not so closely connected as to be inseparable. We can omit the obnoxious feature of absolute and unconditional liability, disclosed in section 1710, and find ample and unambiguous scope for the operation of the remaining sections; and keeping in view the main object to be accomplished by the statute, the general purpose of the legislature will not be defeated, by giving operation to all the sections except the one declared void.

We hold, therefore, that section 1711, which allows six months within which claims of this kind may be sued on, is constitutional, and in full force: and being in conflict with section 1701, and more recent in the date of its enactment, it repeals the latter section. The action was not barred, then, in *sixty days*, but in *six months* from the date of the injury for which this suit is brought; and the demurrer was properly sustained.

It is further insisted, that the court below erred in allowing an attorney's tax-fee to the appellant's counsel, on the ground that the law authorizing it is unconstitutional and void. This action of the court was taken under the provisions of section 1715 of the Code, which constituted section 6 of the statute in question, and reads as follows: "§ 1715. Any corporation, person or persons, owning or controlling any railroad in this State, or any complainant against such corporation, person or persons, taking an appeal from a decision rendered by a justice of the peace, in suit for damages brought under the provisions of section 1711, and failing to sustain such appeal, or to reduce or increase the judgment

before the appellate court, shall be liable for a reasonable
attorney's fee incurred by reason of such appeal, to be
assessed by the court, not to exceed twenty dollars; and
the attorney's fee shall be part of the cost, and collected as
such."

After a careful consideration of this question, during which
it has been held under protracted advisement by the whole
bench, a conclusion has been reached, which clearly per-
suades us that this particular section of the Code is violative
of both the constitution of the State and that of the United
States. The following sections of the Declaration of Rights
(Const. 1875, Art. 1,) are pertinent to this subject:

Section 2 provides, that all persons resident in this State,
who are citizens, are entitled to possess "*equal* civil and
political rights."

Section 11 : "That *no person* shall be *debarred* from *prose-
cuting* or *defending*, before any tribunal in this State, by him-
self or counsel, *any civil cause* to which he is a party."

Section 14 : "That *all courts shall be open ;* and that *every
person*, for any injury done him, in his lands, goods, person
or reputation, shall have a remedy by *due process of law ;*
and *right and justice shall be administered, without sale, denial,
or delay.*"

Article XIV, section 12 of the constitution, also declares,
that "all corporations *shall have the right to sue*, and shall be
*subject to be sued*, in all courts, *in like cases as natural persons.*"

It is further asserted that "the sole object and only legit-
imate end of government is to *protect the citizen* in the enjoy-
ment of life, liberty, and property; and when the govern-
ment assumes other functions, it is usurpation and oppres-
sion."—Art. I, § 37.

The clear legal effect of these provisions is to place all
persons, natural and corporate, as near as practicable, upon
a basis of equality in the enforcement and defense of their
rights in courts of justice in this State, except so far as may
be otherwise provided in the constitution. This right, though
subject to legislative regulation, can not be impaired or
destroyed under the guise or device of being regulated. Jus-
tice can not be sold, or denied, by the exaction of a pecuni-
ary consideration for its enjoyment from one, when it is
given freely and open-handed toan other, without money and
without price. Nor can it be permitted that litigants shall
be debarred from the free exercise of this constitutional right,
by the imposition of arbitrary, unjust, and odious discrimin-
ations, perpetrated under color of establishing peculiar rules
for a particular occupation. Unequal, partial, and discrim-
inatory legislation, which secures this right to some favored

class or classes, and denies it to others, who are thus excluded from that equal protection designed to be secured by the general law of the land, is in clear and manifest opposition to the letter and spirit of the foregoing constitutional provisions.

It was forcibly said by the Supreme Court of Tennessee, in *Wally v. Kennedy* (2 Yerger, 554): "The right of every individual must stand or fall by the same rule or law that governs every other member of the body politic, or land, under similar circumstances; and every partial or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals and corporations would be governed by one law, and the mass of the community, and those who made the law, by another; whereas, the like general law, affecting the whole community equally, could not have been passed."

In *Holden v. James*, 11 Mass. 396 (6 Amer. Dec. 174), the Supreme Court of Massachusetts said: "It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages which are denied to all others under like circumstances; *or that one should be subject to losses, damages, suits or actions, from which all others, under like circumstances, are exempted.*"

The section of the Code under consideration (§ 1715) prescribes a regulation of a peculiar and discriminative character, in reference to certain appeals from justices of the peace. It is not general in its provisions, or applicable to all persons, but is confined to such as own or control railroads only; and it varies from the general law of the land, by requiring the unsuccessful appellant, in this particular class of cases, to pay an attorney's tax-fee, not to exceed twenty dollars. A law which would require all farmers who raise cotton to pay such a fee, in cases where cotton was the subject-matter of litigation, and the owners of this staple were parties to the suit, would be so discriminating in its nature as to appear manifestly unconstitutional; and one which should confine the tax alone to physicians, or merchants, or ministers of the gospel, would be glaring in its obnoxious repugnancy to those cardinal principles of free government which are found incorporated, perhaps, in the Bill of Rights of every State constitution of the various commonwealths of the American government. We think this section of the Code is antagonistic to these provisions of the State constitution, and is void. *Durkee v. City of Gainesville,* 28 Wis. 464; *Gordon v. Win-*

*chester Association*, 12 Bush, 110 ; *Greene v. Briggs*, 1 Curtis, 327 ; Cooley's Const. Lim. (3d ed.) § 393.

The section in question is also violative of that clause in section 1, Art. IV, of the constitution of the United States, which declares that no State shall "deny to any person within its jurisdiction the *equal protection of its laws*." This guaranty was said by Justice BRADLEY, in *Missouri v. Lewis* (101 U. S., 1 Otto, 22, 30), to include "the equal right to resort to the appropriate courts for redress." "It means," as was further said by the court, "that no person, or class of persons, should be denied the same protection which is enjoyed by other persons, or other classes, in the same place, and under like circumstances."

The same court, in *United States v. Cruikshank*, 92 U. S. (2 Otto), 542, 555, *per* WAITE, C. J., used the following language, in discussing the foregoing constitutional clause : "The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States, and it still remains there."—*Ward v. Flood*, 48 California, 36.

The Circuit Court erred in taxing an attorney's fee against the appellant ; and its judgment is, for this reason, reversed, and the cause is remanded.