## THRALL and others vs. THRALL.

*April 14 — May 15, 1884.*

*(1, 2) Evidence: Contract by parent to convey land in consideration of support, etc.: Waiver of strict performance. (3) Notice to lessee of such contract. (4) Estoppel. (5) Granting administration not an adjudication of title.*

1. The evidence in this case is *held* to sustain a finding that the defendant's mother agreed, by letter, that if he would return to, live upon, and work the farm owned by her, improving the same and maintaining his parents, the land should belong to him; and the defendant, having substantially complied with such agreement, is entitled, as against the other heirs of his mother, to specific performance.

2. The mother could waive strict performance of such agreement by the defendant; and if she was not dissatisfied or did not repudiate the contract, evidence of a failure of strict performance is inadmissible.

3. A lease given by the mother to her husband after the defendant had been for several years performing the contract on his part, is *held* to have been taken with notice of his rights, and not to be available, as against him, to the other heirs.

4. The mere fact that after his mother's death the defendant, under the advice of counsel, filed a petition for administration and claimed that her estate was indebted to him for the improvements on the farm and for services and expenses in supporting his parents, does not estop him from claiming the land under the contract.

5. Nor was the granting of letters of administration upon such petition an adjudication upon the question of the title to the land.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment. The parties are the children and heirs at law of William and Phoebe Thrall. The action is by five of them against the sixth, to recover their shares of the land both as the heirs of their mother, who owned the land in fee, and as the heirs of their father, who, as they claimed, owned a leasehold interest therein, the term of which had not expired. The mother died in August, 1875, and the father died in September, 1881. Other facts will sufficiently appear from the opinion. The plaintiffs appealed from a judgment in favor of the defendant.

For the appellants there was a brief by *Jackson & Thompson*, and oral argument by *Mr. Jackson*. They contended, *inter alia*, that specific performance of the contract set forth in the answer should be denied because both its making and its terms are left in doubt. *Shakespeare v. Markham*, 72 N. Y., 400; *Stanton v. Miller*, 58 id., 192; *Cox v. Cox*, 26 Pa. St., 375; *Poorman v. Kilgore*, id., 365; *Knoll v. Harvey*, 19 Wis., 99; *Smith v. Wood*, 12 id., 383, and cases cited; *Dragoo v. Dragoo*, 50 Mich., 573; Abbott's Trial Ev., 729, 730; Pomeroy on Spec. Perf., 151 *et seq.*, 153, n. 1. The proceedings of the defendant in the probate court, upon the faith of which the plaintiffs made expenditures in appearing by counsel and in instituting this suit,

estop the defendant from setting up title to the land. *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; Bigelow on Estoppel, 4, 500, 506, 585; *Turner v. Waldo*, 40 Vt., 51; *Dahlman v. Forster*, 55 Wis., 382. Having elected his remedy, and decided to look to the estate of his mother for compensation, his right to demand specific performance is waived. *Carter v. Smith*, 23 Wis., 497; *Morris v. Rexford*, 18 N. Y., 557; *Littlefield v. Brown*, 1 Wend., 404; 7 id., 454; 11 Ill., 467; *M'Elroy v. Mancius*, 13 Johns., 121; *Sanger v. Wood*, 3 Johns. Ch., 422; *Jukins v. Simpson*, 14 Me., 364; *Butler v. Miller*, 1 N. Y., 503; *Pearsoll v. Chapin*, 44 Pa. St., 12; *People v. Kelly*, 1 Abb. Pr. (N. S.), 432; *Weed v. Page*, 7 Wis., 513; *Seligman v. Kalkman*, 3 Cal., 206; 4 Denio, 554; *Clapp v. Rogers*, 38 N. H., 435; *Benedict v. National Bank*, 4 Daly (N. Y.), 171; *Wilmot v. Richardson*, 2 Keyes, 524; *Webster v. Phœnix Ins. Co.*, 36 Wis., 72. By waiting so long the defendant had forfeited his right to ask specific performance. *Sheldon v. Rockwell*, 9 Wis., 181. The contract of which he asked specific performance was void, being in the nature of a testament and not being in any respect authenticated as required by statute *(Leaver v. Gauss*, 17 N. W. Rep. (Iowa), 522; *Shakespeare v. Markham*, 72 N. Y., 400; *Bayliss v. Estate of Pricture*, 24 Wis., 651)*; and also because of the uncertainty of its terms *(Cole v. Clark*, 3 Pin., 303; *Shakespeare v. Markham, supra)*.

*C. W. Felker*, for the respondent.

COLE, C. J. As a defense to the action of ejectment the defendant set up an equitable counterclaim, to the effect that his mother, Phœbe Thrall, in the fall of 1868, entered into a contract with him by which she agreed, in consideration that he would return from New York; live and reside upon the farm in controversy; improve and work the same; support, provide for, and maintain her and his father (her husband) during their natural lives,— that the premises

should become and be his sole and separate property. He alleges that he did return in the spring of 1869; took possession of the farm in pursuance of this agreement; worked the same; made various improvements thereon; supported and maintained his parents, while they both lived; and generally performed the contract on his part. He asked for a specific performance of this contract, and that the court adjudge the title of the farm to be in him. On the second trial of the cause the learned circuit court found that the facts set up in the counterclaim were established by the proof, and granted the relief prayed in the answer.

It is obvious that the record on this appeal presents mere questions of fact which it would be unprofitable to discuss at any length. A vigorous attack was made by the plaintiffs' counsel upon the findings of the circuit court; but it seems to us there is ample proof to sustain them. Of course, the rule of this court is familiar to the bar, that the findings of the trial court will not be set aside unless they are against the weight of testimony. The burden of overcoming them is upon the party appealing. Now, as counsel contends, the *onus* in the court below was upon the defendant to prove that the contract upon which he relied was actually entered into, and to show its terms with clearness and certainty. The learned counsel says that no such proof was given on the trial. But, in order to make good his contention, the counsel, in effect, asks the court to reject as improbable and unworthy of credit the testimony of Dr. Hurd and of the witness J. P. Tyrrell, both of whom swear to the contents of a letter written by the mother, Mrs. Thrall, to the defendant in New York, which, in substance, proposed if he would return home and take care of his parents while they lived, stay on and work the farm, he should have it and all that was on it. Dr. Hurd says Mrs. Thrall wrote such a letter by his advice, in the summer or fall of 1868, which he himself mailed. There is other testimony as to the repeated

statements of Mrs. Thrall to neighbors, during the time the defendant was in possession of the farm and carrying it on, which corroborates the testimony of Dr. Hurd and Tyrrell that a letter was written about that time by Mrs. Thrall to the defendant, which contained the essential terms of a proposition or contract such as is set up in the counterclaim. Now, the question is, Was the court below justified in relying on the veracity of these witnesses, and in giving credit to their statements on this important point? We certainly see nothing in the testimony so improbable or inconsistent as would authorize a court in rejecting it as false. Besides, it is difficult to account for the acts of the parties except upon the assumption that some arrangement of the kind as to working the farm, the support of the old people, and compensation of the defendant had been made; for it is an incontrovertible fact that in the fall of 1868 the defendant held a position in New York as shipping clerk, where he was receiving a salary of $1,100 a year, which he voluntarily gave up and came home to carry on a farm of eighty acres, which was run down, buildings and fences out of repair, and on which there was but little stock, and from which, with his best endeavors, he could hope to barely make a living for himself and parents, as he did do. Now, when we find the defendant acting in this manner, working the farm faithfully for twelve years or more, expending all the money he could raise in making improvements, and barely making a poor living, we would naturally infer that some contract existed by which he was to be compensated for his services at some time. The learned counsel for the plaintiffs felt the force of this view of the case, and candidly admitted his belief that the defendant did have letters from his mother asking him to come home, proposing some agreement about his carrying on the farm, by which, at some time and on some terms, he was to have a portion of the property as compensation. Of course, such a conclusion is not only nat-

ural but irresistible from the acts of the defendant, even if we had no evidence that a contract was made. But the evidence quite satisfactorily shows what the agreement was.

But it is said that the essential terms of the contract are so much in doubt that a court of equity will not enforce or sustain it. We quite disagree with counsel on this point. All the testimony bearing on the question tends to prove substantially the same contract: that the defendant was to have the farm as a compensation for supporting his parents while they lived, if he would come home and carry it on. There is nothing indefinite or uncertain in the terms of the agreement. But the same counsel insists that the testimony of Dr. Hurd is not to be believed because he is directly contradicted on some points by the plaintiffs' witnesses. It is true, Dr. Hurd details at considerable length the circumstances under which Mrs. Thrall wrote the letter in the summer or fall of 1868, and on some unimportant particulars he is contradicted by other witnesses. But as to the essential facts, namely, the writing of such a letter by Mrs. Thrall and its contents, he is not contradicted by any one, but is supported by the weight of testimony. Surely, as to the principal matter, his statements must be deemed as either substantially correct or they are a pure fabrication. And we can see no sufficient grounds for imputing to him the crime of wilful perjury. The same remark might be made of the witness Tyrrell, who swore to reading a letter in 1871, handed him by the defendant, which purported to have been written by Mrs. Thrall. That letter contained a contract or proposition the same as the one set up in the counterclaim. We are obliged either to credit his statements as to the contents of the letter, or conclude that he swore falsely without any apparent motive. The loss of this letter, which contained the contract, is justly made a subject of criticism by the plaintiffs' counsel. But the evidence that such a letter was written and received is too cogent and abundant to justify

a court in denying the fact that it once existed. The defendant may have been careless in not keeping it in some secure place, so that he could produce it as proof of his rights. But this act of carelessness should not defeat his rights founded upon the contract which it contained. The absence of the letter was fairly accounted for, and the evidence as to its contents was sufficiently clear to satisfy the court below that Mrs. Thrall made a contract in writing with the defendant wherein she agreed to convey to him the farm in consideration that he would return home, reside on the premises, and support and maintain his parents during their natural lives. The court further found as facts that the defendant in all respects fully carried out and performed all the conditions of the agreement on his part, in working the farm, and in providing for the support and maintenance of his parents while they lived. Such being the case, we see no objection to enforcing the contract.

The counsel complains because the plaintiffs were not permitted to show that the defendant failed to supply his parents with proper clothing, etc. The court ruled that the proof must be confined to showing that Mrs. Thrall was dissatisfied and repudiated the contract; — that if she did not choose to repudiate it, it was immaterial whether the defendant fully performed, so far as supplying certain articles of clothing was concerned. No doubt Mrs. Thrall could waive a strict performance on the part of the defendant.

A few weeks before her death Mrs. Thrall executed to her husband a lease of the farm for fifteen years. The lessee died in September, 1881, and the plaintiffs, as his heirs, claim that they were entitled to recover the unexpired leasehold estate. It is not pretended that anything was paid for this lease; it was doubtless voluntary. But, were it otherwise, it is incredible that the father did not know all about the conditions of the contract under which the defendant was in possession and carrying on the farm. At all events, he was chargeable with notice of defendant's rights.

It appeared on the trial that in January, 1881, the defendant filed in the probate court of Winnebago county a verified petition, asking that letters of administration on his mother's estate be granted to him. At the hearing of this petition the defendant claimed that the estate was indebted to him for improvements made on the farm, and for services and expenses in supporting his parents, in the sum of $1,500. Letters of administration were issued to one Milo Bushnell, but nothing further was done in the matter. The plaintiffs' counsel claims that in consequence of this proceeding in the probate court the defendant is now estopped from asserting that he is the owner of the farm under the contract in question. We are utterly unable to perceive any grounds for estoppel resulting from that proceeding. The defendant testified that he was induced to commence the proceeding in the probate court by advice of counsel, who told him he could not hold the farm under his contract. This legal advice he acted upon in filing his petition. But his claim has never been presented, acted upon, or allowed by the probate court, and, of course, has never been paid. It seems to us too plain for discussion that no principle of estoppel can be predicated on the probate proceeding.

Equally untenable is the position that the probate court adjudicated in that proceeding that the farm was a part of the estate of Phœbe Thrall, deceased. All that the probate court could or did do on the hearing of the petition was to decide that a proper case was made for granting letters of administration on that estate. It had no authority at that stage of the proceeding to adjudicate upon or settle any question of title to real estate.

We do not deem it necessary to notice further the objections taken by plaintiffs' counsel to the rulings of the court on the trial. On the whole record we think the judgment was right and must be affirmed.

*By the Court.*— It is so ordered.