## CHICAGO, R. I. & P. RY. CO. v. MASHORE.

No. 2028, Okla. T.   Opinion Filed May 15, 1908.

(96 Pac. 630.)

1.  EVIDENCE—Pleading in Prior Suit—Estoppel—Quasi Admissions —No Estoppel. In the trial of a case brought for work and labor, it developed that plaintiff had brought a prior action, in which he charged another party, as defendant, for the same services, which action was not tried, and no judgment rendered therein. In the case on trial, defendant asked an instruction to the effect that this former action worked an estoppel to plaintiff's prosecution of his case against it, which was denied by the court. Held not error. The bill of particulars in such former suit, being a quasi admission, was competent as evidence, but did not constitute an estoppel.

2.  APPEAL AND ERROR—Review—Verdict—Evidence—Sufficiency. Where a verdict is found by a jury on conflicting evidence, and is reasonably supported thereby, the cause will not be reversed in this court, on the ground that the same is contrary to the evidence, or not sustained by sufficient evidence.

3.  CONSTITUTIONAL LAW—Equal Protection of the Laws—Actions for Personal Services—Attorney's Fee Unconstitutional. Section 1, c. 87, par. 6915, Wilson's Rev. & Ann. St. Okla. 1903, providing for an attorney's fee, where an action is brought by any laborer, clerk, servant, nurse, or other person, for compensation for personal services, to be recovered as costs, is in violation of the fourteenth amendment of the Constitution of the United States and void.

(Syllabus by the Court.)

*Error from District Court, Caddo County; F. E. Gillette, Judge.*

Action for wages by W. F. Mashore against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff was affirmed in the district court, and defendant brings error. Reversed, with directions.

On the 5th day of February, 1904, W. F. Mashore, as plaintiff, filed in the office of Homer A. Arends, a justice of the peace of Caddo county, his bill of particulars against the above-named plaintiff in error, the C., R. I. & P. Ry. Co., in which he alleged that, in the month of September, 1903, at the special instances and requests of the defendant railroad company, through its agent and employe, Edward Bitsche, he performed certain work and labor on the said company's roadbed, at an agreed price of 30 cents per hour, and that, by virtue of said work, defendant was indebted to him in the sum of $83.10, for which, with costs, and $15 attorney's fee, he prayed for judgment. Judgment was recovered, and the defendant appealed to the district court where, on the trial of the case, judgment was again recovered against the defendant, which has brought the case to this court by proceedings in error.

*Blake, Blake & Low, Dale & Bierer, Benj. F. Hegler, Jr., M. A. Low,* and *A. J. Morris,* for plaintiff in error.
*W. R. Wheeler,* for defendant in error.

DUNN, J. (after stating the facts as above). There are four assignments of error, presented and argued in the brief of plaintiff in error, for our consideration. It appeared on the trial that in September, 1903, the plaintiff, Mashore, filed a verified bill of particulars before the same justice of the peace, in which he sued the above-named Edward Bitsche for this claim, garnisheeing the railroad company. This fact was proven on the trial, and the defendant asked the court to give the following instruction, which related thereto:

"You are further instructed that a fact once solemnly stated or admitted in a pleading, filed in a court of justice, is thereafter, so far as the party to such pleading or his privies in interest are concerned, forever established, and such party is not thereafter permitted to dispute it; and, if you find from the evidence that the plaintiff herein, in his pleadings in justice court, or this court, stated or alleged that he performed the work herein

sued on for E. Bitsche, then he is forever estopped or concluded thereby."

This instruction was refused, which is the first error assigned. This raised the question of what effect, on the rights of the parties hereto, was the filing of this other suit, which was not prosecuted, and on which no judgment was taken. Was it merely a quasi admission on the part of plaintiff, or did it work an estoppel against his suing defendant in this case? Upon this question, Mr. Wigmore, in his work on Evidence (section 1063), says: "Whether a pleading in another suit is receivable as an admission is a question that has led to a surprising variety of opinion." And, further, in discussing the effect of pleadings in another suit as evidence, in section 1057, he says: "The law of evidence has suffered, in its most vital parts, from an ailment almost incurable —that of confusion of nomenclature." And then he terms statements contained in pleadings not in the same suit as "quasi admissions," denominating pleadings in the case on trial, and the allegations therein contained of opposite parties, as "admissions," or "a waiver relieving the opposite party from the need of any evidence." He then says, in section 1058: "A quasi admission, of the present sort, being nothing but an item of evidence, is therefore not in any sense final or conclusive. The opponent whose utterance it is, may, none the less, proceed with his proof in denial of its correctness. It is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence." Discussing the question of whether or not an estoppel would be created, he says: "An estoppel—i. e., a representation —acted on by the other party, by creating a substantive right, does oblige the estopped party to make good his representation; in other words, but inaccurately, it is conclusive. So, too, but for an entirely different reason, a judicial admission is conclusive, in the sense that it formally waives all right to deny, for the purpose of the trial; i. e., it removes the proposition in question from the field of disputed issues. But statements which are not estoppels or judicial admissions have no such quality, and on

principle cannot have." He thereby distinguishes between quasi admission and judicial or solemn admissions; one made outside of the cause at bar, and the other within it.

Concerning the same subject, in section 1065, Mr. Wigmore says:

"The moment we leave the sphere of the same cause, we leave behind all questions of judicial admissions. A judicial admission is a waiver of proof; and a pleading is, for the purpose of the very cause itself, a defining of the lines of controversy and a waiver of proof on all matters outside these lines of dispute. But this effect ceases with that litigation itself; and when we arrive at other litigation, and seek to resort to the parties' statements as embodied in the pleadings of prior litigations, we resort to them merely as quasi admissions—i. e., ordinary statements—which now appear to tell against the party who then made them."

And he concluded section 1066 with the statement "that the pleadings in the prior cause, then, can be treated as evidence in later causes must be conceded." And this is the extent to which this author gives credit to this class and character of evidence.

An inspection of the adjudications of the courts, however, discovers they are not entirely in harmony on the proposition, some of the earlier ones holding an estoppel may be worked by taking an inconsistent position in a prior suit; but we believe the better rule sustains the text of the author which we have cited. A few of the cases which we have examined, and which hold in consonance therewith, are as follows: *Rich v. City of Minneapolis,* 40 Minn. 82, 41 N. W. 455; *Pope v. Allis,* 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 393; *Gardner v. Bean,* 124 Mass. 347; *Hunter v. Hunter or Milam,* 111 Cal. 261, 43 Pac. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180; *Thrall v. Thrall,* 60 Wis. 503, 19 N. W. 353; *Coward v. Clanton,* 79 Cal. 23, 21 Pac. 359; *Consolidated Steel & Wire Co. v. Burnham, Hanna, Munger & Co.,* 8 Okla. 514, 58 Pac. 654; 8 Enc. Pleading & Practice, pp. 20-22, and cases cited.

Mr. Wharton, in his work on Criminal Evidence, declares the rule on this subject to be as follows:

"The pleadings of a party in one suit may be used in evidence against him in another, not as estoppel, but as proof, open to rebuttal and explanation, that he admitted certain facts."

The case of *Thrall v. Thrall,* from the Supreme Court of Wisconsin, *supra,* was one wherein a son, working in New York, was induced, by his mother, to return to their 80-acre farm in Wisconsin, and provide for and work the farm during her and his father's actual life, and thereafter the farm should be his. On the death of his parents he filed a verified claim againt the estate for his survices and the support of his parents. This was done on the advice of counsel, but it was not paid, and no action was taken on it. Later, being in possession of the place, an action of ejectment being brought against him by the other heirs, he set up his contract, and asked for a specific performance. It was contended in that suit that he was estopped, by his former inconsistent action, from showing that he was the owner of the farm under the contract in question. The court, through Chief Justice Cole, says:

"We are utterly unable to perceive any grounds for estoppel resulting from that proceeding. The defendant testified that he was induced to commence the proceedings in the probate court by advice of counsel, who told him he could not hold the farm under his contract. This legal advice he acted upon, filing his petition. But his claim has never been presented, acted upon, or allowed by the probate court, and, of course, has never been paid. It seems to us too plain for discussion that no principle of estoppel can be predicated on the probate proceeding."

The syllabus in the case reads:

"Where a son, under advice of counsel, puts in a claim for services in probate court against his mother's estate, but that claim is neither acted upon nor paid, held that he is not estopped from showing that such claim arose upon contract, and from asking that the contract be specifically performed."

In the case of *Rich v. City of Minneapolis, supra,* the court in the syllabus said:

"An admission, by a party in his pleading in an action, is evidence tending to prove the same fact in another suit between the same parties, but it is not conclusive."

In the case of *Gardner v. Bean, supra,* from the Massachusetts Supreme Court, the syllabus reads as follows:

"In an action against a married woman, for goods sold and delivered, there was evidence . that the goods were originally charged to her husband, and credit given to him, that he was acting as agent for her, and that, a short time after the action was commenced against her, the plaintiff signed a petition in bankruptcy against him, stating that this same debt was due from him.  The judge ruled that the facts that the plaintiff originally gave credit to the husband, and also signed and swore to the petition in bankruptcy, were strong evidence that the debt was due from him, and not from the defendant; but that these facts were not conclusive against the plaintiff, but were to be considered by the jury in connection with the other evidence in the case. Held, that the defendant had no ground of exception to the instruction."

The fact that the litigant in another suit assumes a position different from one assumed on trial, either by his pleadings or in any other manner, will be considered as evidence against him, but not conclusive, nor will it work an estoppel.  In the case at bar the plaintiff filed his bill of particulars.  This was sworn to, and in it he charged that Bitsche was his debtor.  This case was not tried, and did not go to judgment, and this statement as a bill of particulars was no other or different than it would have been had it been in any other form equally as solemn.  It was evidence against him, and exceedingly strong evidence, but it was not conclusive.

The case of *Hunter v. Hunter,* from California, *supra,* was one wherein the proposition raised in this case was involved. In that case Mrs. Hunter was married to a man by the name of Milam, in February, 1858.  She lived with him as his wife for about 10 days, and then left him, and was gone for about 4

years. Thereupon she was married to the plaintiff in this case. In December, 1883, she filed her verified petition in an action for divorce against Milam, in which she described herself as Jane Elizabeth Milam, and asserted that plaintiff and defendant were married in February, 1858, and had been ever since, and now are, husband and wife. On the same day she made affidavit to secure publication service, and stated that the defendant resided out of the state. After securing this divorce she then brought suit to annul her marriage with Hunter, and again filed a complaint, in which she swore that at the time of her marriage to Hunter, her first husband, Milam, was living, and that she had not been divorced from him. This action was dismissed. Thereafter Hunter began his suit to annul the marriage between himself and wife, and on her defending it was contended that her solemn admissions in this other suit worked an estoppel against her, making claim that she and Milam were not husband and wife at the time of her marriage with plaintiff. The Supreme Court of California, in this case, says:

"It is further contended that her affidavits are conclusive evidence against her. Three times she stated under oath that she was the wife of Milam when she was married to Hunter. This is very strong testimony against her, but is only strong evidence. It is not an estoppel. She went upon the stand as a witness for herself, and explained that she made those affidavits upon the strength of a rumor she heard. This was all that she had heard. The court found in her favor, and must have believed her statement."

So it is in the case at bar. The bill of particulars filed by plaintiff was very strong evidence against him, but it was not an estoppel. When asked about it, on cross-examination, he stated: "I was misled in that action. I did not employ Baker, the attorney who brought the suit. I signed the list for attorney which the other parties employed." Further, that he did not explain the facts to his attorney, and in this way broke the force of the quasi admission contained in the bill of particulars.

The plaintiff in error also contends that the verdict is con-

trary to the evidence. The testimony in the case is conflicting in the extreme. The plaintiff and Bitsche, who was his witness, clearly contradicted their own testimony which was rendered at the former hearing, according to the transcript thereof, made by a stenographer who was present at the time and took it. They were also in direct conflict with the testimony of Mr. Johnson, who was the employing agent of the railroad company, who testified that the only contract made for the work was to remove the earth at the rate of 10 cents per cubic yard, and that there was no agreement to pay 30 cents per hour, as testified to by plaintiff and Bitsche, and that plaintiff was not employed by them. It was clearly a question of veracity between these parties; for there was sufficient evidence on either side, if the jury believed the parties, to have found a verdict. The plaintiff and his witness Bitsche fully corroborated each other as to the contract, and the trial court having heard the evidence, and having overruled the motion for new trial, in which is an assignment that the verdict is not sustained by sufficient evidence, and is contrary to law, and the jury having seen the witnesses, and found its verdict, and the evidence reasonably tending to support it, we will not disturb.

The complaint is also made upon certain questions, which were asked, by the court, of witness Bitsche while on the stand, to which the defendant objected and excepted. They were as follows:

"Q. Have you ever had any estimate of the work done out there? Has the company furnished you an estimate of the amount of the work done by you? A. No, I never worked for them at 10 cents a yard. Q. Have they paid you anything for that work? A. No, at 30 cents an hour. Never worked for them by the yard."

It was the contention of the plaintiff in error that Johnson had employed Bitsche to remove the earth at 10 cents a yard, and that Bitsche had employed this plaintiff; and it perhaps is developed from this evidence that, not only had Bitsche not been paid, but Mashore also had not been paid, and the questions of the court were doubtless asked to throw light upon the entire transaction, as they relate solely to the work, a part of which had been

performed by plaintiff. The investigation was on a proposition not strictly within the issues of this cause, the answers are scarcely responsive, and we cannot say that it was error, or at least sufficient to require a reversal, as we cannot believe that the verdict. which was rendered with this evidence in, would not have been rendered, or would have been different, with this evidence out.

The last proposition raised is on the allowance of the attorney's fees in the sum of $15, and it is urged that this provision of our statute is in conflict with the provisions of the Constitution of the United States, which guarantees to all persons· equal protection of the law. Our statute on this proposition (section 1, c. 87, par. 6915, Wilson's Rev. & Ann. St. Okla. 1903) is as follows:

"In all cases within the jurisdiction of a justice of the peace, where an action is brought by any laborer of any kind, clerk, servant, nurse or other person, for compensation claimed due for personal services performed, if a recovery be had in such action, the plaintiff shall, in addition to the amount found due, be entitled to recover as part of the costs a judgment against the defendant, for an attorney's fee of not less than two dollars and fifty cents, and not more than fifteen dollars to be fixed by the court, for the use and benefit of ·plaintiff's attorney, together with costs: Provided, however, that if the defendant appear before the time set for trial, and offer to confess judgment for a sum of money and costs and make a tender of the same, and the plaintiff on trial, fails to recover a greater sum, then no attorney's fees or costs incurred after the tender shall be taxed against the defendant."

Mr. Cooley, in his work on Constitutional Limitations (sixth edition, p. 483), says:

"But every one has the right to demand that he be governed by general rules; and a special statute, which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws are to govern by promulgated established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plow. This is a maxim in con-

stitutional law, and by it we may test the authority and binding force of legislative enactments."

The statute providing the assessment of attorney's fees in cases of this character is violative of the fourteenth amendment of the Constitution of the United States, in that it does not give to all parties the same, equal protection of the law. The defendant, being sued for wages under this statute, is not on an equal footing with the plaintiff. If he makes an unsuccessful defense, he is mulcted in an attorney's fee, to be paid to the plaintiff, while if he is successful, the plaintiff is not required to pay any attorney's fee to him. In other words, justice is not dispensed, with an impartial and equal hand, to these litigants. A court is always loath to hold a statute, the solemn act of the Legislature, unconstitutional and void, and never does so, except where its provisions make this duty a plain and imperative one. In the present case we have examined a large number of authorities wherein the constitutionality of such statutes has been raised, and in every one of them the court of last resort has held it unconstitutional. We cite a few of such cases.

The statute of Ohio, dealing with the right of a laborer to recover an attorney's fee (Act March 3, 1892, 89 Ohio Laws, p. 59, § 6563a) provides:

"If the plaintiff in an action for wages recover the sum claimed by him in his bill of particulars, there shall be included in his costs such fee as the court may allow, but not in excess of five dollars for his attorney. But no such attorney fee shall be taxed unless said wages have been demanded in writing and not paid within three days after such demand. If the defendant appeal from any such judgment and the plaintiff on appeal recover a like sum exclusive of the interest from the rendition of the judgment before the justice, there shall *not* be included in his costs such additional fee not in excess of fifteen dollars for his attorney as the court may allow."

The Supreme Court of the state of Ohio, in the consideration of this question and the statute cited, in the case of *Coal Company*

*v. Rosser,* in a lengthy discussion, at page 12 of 53 Ohio St., 41 N. E. 263, 53 Am. St. Rep. 622, states the law to be as follows:

"A statute that imposes this restriction upon one citizen, or class of citizens, only, denies to him or them the equal protection of the law. It is true that no provision of the Constitution of 1851 declares, in direct and express terms, that this may be done; but, nevertheless, it violates the fundamental principles upon which our government rests, as they are enunciated and declared by that instrument in the Bill of Rights. The first section of the Constitution declares that the right to acquire, possess, and protect property is alienable, and the next section declares, among other things, that 'government is instituted for the equal protection and benefit' of every person, while section 16 of article 1 provides that: 'All courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and justice shall be administered without denial or delay.' The right to protect property is declared, as well as that justice shall not be denied, and that every one is entitled to equal protection. Judicial tribunals are provided for the equal protection of every suitor. The right to retain property already in possession is as sacred as the right to recover it when dispossessed. The right to defend against an action to recover money is as necessary as the right to defend one brought to recover specific real or personal property. An adverse result in either case deprives the defeated party of property. If the General Assembly has power to enact the statutes in question it could also enact one providing that lawyers, doctors, grocers, or any other class of citizen, might make out their accounts, demand in writing their payment within a short time, and if not complied with, would entitle the plaintiff to an attorney's fee in addition to his claim if he recover the amount demanded. We do not think the General Assembly has power to discriminate between persons or classes, respecting the right to invoke the arbitrament of the courts in the adjustment of their respective rights. The legislative power to compel an unsuccessful party to an action—generally the defendant—to pay an attorney's fee to his opponent has received the attention of a number of courts of last resort, as well as laws, which impose as a penalty double damages or some similar penalty for some wrongful or negligent act injurious to another. Where the penalty has been imposed for some tortious or negligent act, the statute has generally though

not always, been sustained, but on the contrary, where no wrongful or negligent conduct was imputed to the defeated party, any attempt to charge him with a penalty has not prevailed. *Millett v. People,* 117 Ill. 294, 7 N. E. 631, 57 Am. Rep. 869; *State v. F. C. Coal & Coke Co.,* 33 W. Va. 188, 10 S. E. 288, 6 L. R. A. 359, 25 Am. St. Rep. 891; *Durkee v. City of Janesville, et al.,* 28 Wis. 464, 9 Am. Rep. 500; *S. & N. Alabama R. R. Co. v. Morris,* 65 Ala. 193; *Wilder v. C. & W. Michigan Ry. Co.,* 70 Mich. 382, 38 N. W. 289; *Braceville Coal Co. v. People,* 147 Ill. 66, 35 N. E. 62, 22 L. R. A. 340, 37 Am. St. Rep. 206; *Atchison & Nebraska R. R. Co. v. Baty,* 6 Neb. 37, 29 Am. Rep. 356; *San Antonio & A. P. R'y v. Wilson* (Tex. App.) 19 S. W. 910; *Peoria, Decatur & Evansville R'y Co. v. Duggan,* 109 Ill. 537, 50 Am. Rep. 619."

In addition to the authorities which are cited to support this opinion, we call attention to the following cases, applicable to the decision of the question: *Johnson v. Goodyear Min. Co.* 127 Cal. 4, 59 Pac. 304; 47 L. R. A. 338, 78 Am. St. Rep. 17; *South & North Alabama R'y Co. v. Morris,* 65 Ala. 193; *Chicago, St. L. & N. O. Ry. Co. v. Moss & Co.,* 60 Miss. 641; *Braceville Coal Company v. People,* 147 Ill. 66, 35 N. E. 62, 22 L. R. A. 340, 37 Am. St. Rep. 206; *Grand Rapids Chair Company v. Allick G. Runnels, Sheriff of Newaygo County,* 77 Mich. 104, 43 N. W. 1006; *Denver & Rio Grande Railroad Co. v. Outcalt,* 2 Colo. App. 395, 31 Pac. 177; *Gulf, Colorado & Santa Fe Railway Co. v. Ellis,* 165 U. S. 158, 17 Sup. Ct. 255, 41 L. Ed. 666; *South & North Alabama Railroad Company v. Morris,* 65 Ala. 193.

In the case of *South & North Alabama Railroad Company v. Morris, supra,* the court had under consideration section 1715 of the Code of that state, which provided that:

"Any corporation, person or persons, owning or controlling any railway in this state, or any complainant against such corporation, person or persons, taking an appeal from a decision rendered by a justice of the peace, in suit for damages, brought under the provisions of section 1711, and failing to sustain such appeal, or to reduce or increase the judgment before the appellate court, shall be liable for a reasonable attorney's fee incurred by reason of such appeal, to be assessed by the court, not to exceed twenty dol-

lars; and the attorney's fee shall be part of the costs, and collected as such."

It will be noted that the terms of this statute are somewhat different from the one under consideration before the court, in that in justice of the peace suits, a railroad company, or any person owning or controlling any railroad, or any person complaining against the same, taking an appeal from a decision rendered by a justice of the peace in certain cases mentioned in the statute, and on such appeal failing to reduce or increase the judgment, shall be liable for an attorney's fee. It will be observed that an effort at uniformity was sought to be effected between such parties, in that either party would litigate or appeal at his peril, and the successful party would always have awarded him an attorney's fee while the losing party would always be chargeable with one.

The Supreme Court of Alabama in the consideration of this statute, speaking through Mr. Justice Somerville, says:

"The section of the Code under consideration (section 1715) prescribes a regulation of a peculiar and discriminative character, in reference to certain appeals from justices of the peace. It is not general in its provisions, or applicable to all persons, but is confined to such as own or control railroads only; and it varies from the general law of the land by requiring the unsuccessful appellant, in this particular class of cases, to pay an attorney's tax fee, not to exceed $20. A law which would require all farmers who raise cotton to pay such a fee, in cases where cotton was the subject-matter of litigation, and the owners of this staple were parties to the suit, would be so discriminating in its nature as to appear manifestly unconstitutional; and one which should confine the tax alone to physicians, or merchants, or ministers of the gospel, would be glaring in its obnoxious repugnancy to those cardinal principles of free government, which are found incorporated, perhaps, in the Bill of Rights of every state Constitution of the various commonwealths of the American government. We think this section of the Code is antagonistic to these provisions of the state Constitution and is void. *Durkee v. City of Gainesville,* 28 Wis. 464, 9 Am. Rep. 500; *Gordon v. Winchester Association,* 12 Bush. (Ky.) 110, 23 Am. Rep. 713; *Greene v. Briggs,* 1 Curtis (U. S.) 327.

Fed. Cas. No. 5764; Cooley's Const. Lim. (3d Ed.) § 393. The section in question is also violative of that clause in section 1 of the fourteenth amendment of the Constitution of the United States which declares that no state shall 'deny any person within its jurisdiction the equal protection of its laws.' This guaranty was said, by Justice Bradley, in *Missouri v. Lewis*, 101 U. S. 22, 30, 25 L. Ed. 989, to include 'the right to resort to the appropriate courts for redress.' 'It means,' as was further said by the court, 'that no person, or class of persons, should be denied the same protection which is enjoyed by other persons, or other classes, in the same place, and under like circumstances.' "

From the foregoing authorities it will be seen that our statute providing for recovery, in suits for personal services rendered by a laborer, clerk, servant, nurse, or other person, an attorney's fee not to exceed $15, to be fixed by the court, is in conflict with the fourteenth amendment to the Constitution of the United States, in that it denies to the defendant the equal protection of the law.

The cause is accordingly remanded to the district court of Caddo county, with instructions to set aside the judgment heretofore rendered, and enter one modified in accordance with the provisions of this opinion.

All the Justices concur.