## BENNETT v. BEATTY.

No. 13882—Opinion Filed Oct 7, 1924.

1. **Appeal and Error—Review—Conflicting Evidence—Verdict.**

Where a verdict is found by a jury on conflicting evidence, and is reasonably supported thereby, the cause will not be reversed in this court on the ground that the same is contrary to the evidence, or not sustained by sufficient evidence.

2. **Libel and Slander—Minimum Recovery and Attorney's Fees—Constitutionality of Statute.**

Section 500, Comp. Stat. 1921, providing in case plaintiff is successful his judgment shall not be less than $100, and if defendant is successful in his defense and the proof

shows the action to be malicious or without reasonable provocation, he shall be awarded his costs, including $100 attorney's fees, is not violative of any fundamental or constitutional rights of either party.

## 3. Same — Judgment for Defendant Sustained.

The record examined, and held sufficient to sustain the judgment.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by John Bennett for slander against D. M. Beatty. Judgment for defendant, and plaintiff appeals. Affirmed.

J. Q. A. Herrod and Horton & Horton, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

Opinion by THREADGILL, C. The action was for slander, brought by plaintiff in error against defendant in error, to recover damages. Plaintiff alleged that defendant, at a public sale in the neighborhood of Jones, in Oklahoma county, and in the presence of about 200 people, slandered him by calling him a thief, and charging him with stealing cotton and cattle from him, and to his damage in the sum of $10,000. That the charges were false and made for the purpose of damaging and injuring the plaintiff, and the defendant should pay vindictive damages in the sum of $5,000.

The defendant answered with general denial and pleading further that, on the occasion of the public sale, he did tell the plaintiff that he stole his calves and this charge was true. He states the action against him is malicious, and he asks for costs and $100 attorney's fees. Plaintiff filed a reply consisting of general denial. The cause was tried to a jury and resulted in a verdict and judgment in favor of defendant for costs and $100 attorney's fees, and plaintiff appeals from this judgment, by petition in error and case-made, urging three assignments of error as follows:

(1) That the evidence was not sufficient to sustain the judgment.

(2) That the evidence was not sufficient to sustain the verdict that the action was malicious.

(3) That the statute authorizing $100 as attorney's fees in favor of the defendant where the plaintiff's action is maliciously brought is unconstitutional and void.

The first two assignments of error involve only the sufficiency of the evidence, and we do not deem it necessary to recite the same in this opinion. It is sufficient to say, we have read the testimony of all the witnesses, except the latter part of what seems to be the testimony of the defendant and the testimony of any other witness that may be out of the record, which is missing from page 174 to 200 of the case-made.

There is no explanation why the testimony of the plaintiff breaks off so abruptly or why these pages of the record are missing. The case-made does not seem to be complete, but since there is no objections raised to it, we are considering it without raising any. The evidence is very conflicting and some of it wanders far beyond the issues raised by the pleadings. On the material issues, the defendant testified that he found in the possession of the plaintiff two of his calves on the occasion when he and the plaintiff were shipping some cattle from Moore to Oklahoma City, that he had two unbranded calves with the bunch he had placed in the cattle pen to be loaded on board the car and the plaintiff had placed a bunch of cattle in the adjoining pen to be placed on board a different car to be shipped at the same time that the fence separating the two herds of cattle was made in such a manner that the calves could not have gotten out of the pen where he placed them into the pen where the plaintiff's cattle were, without assistance. After placing his cattle in the car the mother of one of the calves, by her bawling and the answer or blatting of the calf in response, called his attention in the first instance to the calves being out of his pen. He testified that he spoke to the plaintiff about it and the plaintiff denied any knowledge of the situation, and when the calf was pointed out to him his explanation was that he did not know how it got into his pen without it crawled through a crack. The plaintiff testified that he called the defendant's attention to the calf being in his pen. Anyway, plaintiff got possession of the calf and put it into the car where his other cattle were and the cow and calf were pacified. They then proceeded to count the plaintiff's cattle by turning them through the gate one by one into the adjoining pen, and in counting by this method the plaintiff claimed and counted 26 head, and the defendant counted only 25 head. This was repeated two or three times with the same result. The cattle were shipped in the nighttime to the stock yards of Oklahoma City. The next morning, the defendant claims, he discovered, in the

bunch of cattle shipped and unloaded by the plaintiff another calf which belonged to him, and which was unbranded, and he charged the plaintiff at the same time with having this calf in his possession, and he testifies that the plaintiff denied that it was the defendant's calf, and defendant says that he was going to have an officer to come and count the cattle and the plaintiff told him that if he would say no more about the matter he would pay him for the calf, and the defendant says that he told the plaintiff that he ought to send him to the penitentary, that there was where he belonged, but upon his promise to pay for the calf he dropped it. The plaintiff, in his testimony, denies this conversation. There was introduced in evidence the live stock waybill of the railroad showing defendant's shipment, and this waybill had listed 24 head of hogs and 36 head of cattle and calves, and the evidence of the witnesses shows that there were no hogs in the shipment and there were not 36 head of cattle, and only 25 head after the calf claimed by the plaintiff was taken out of the shipment, and the plaintiff does not give any satisfactory explanation of how the list of hogs and cattle got into this waybill. There was evidence introduced as to the reputation of the plaintiff in the neighborhood where he lived for honesty and for truth and veracity, and his reputation as to these virtues was bad. The jury heard all this conflicting evidence, and, from their verdict, they believed the defendant's evidence and disbelieved the plaintiff's, and they had a right to infer, from all the facts and circumstances submitted to them in the case, that the plaintiff was guilty of taking the property of the defendant and appropriating it to his own use. In order to find the charges made by the defendant against the plaintiff to be true the jury did not have to observe the rule of reasonable doubt, but a preponderance of the evidence was sufficient.

A great deal of the evidence recites the facts and circumstances of the trouble between the plaintiff and defendant on the day of the public sale where the plaintiff charged, in his petition, that the defendant slandered him by calling him a thief. As to what took place on that occasion the testimony is very conflicting. The plaintiff and his witnesses make it appear that he was unoffending, that the defendant came upon him unawares and called him vile names, and denounced him as a thief, and struck him and kicked him, and the plaintiff was quiet and peaceful and offered no resistance. On the other hand the defendant and his witnesses make it appear that the plaintiff

started the trouble, that when he was near the defendant and in his hearing he charged the defendant and one Ben Dancy with giving him the name of being a thief and a bootlegger, and said that he might as well have the game as to have the name, and while he was talking in that strain the defendant turned and faced him and spoke to him and said to him, "Jack you know you did steal one of my calves." That he did not call him any vile names and denounce him in a loud, angry manner. That when he told him that he stole his calf the plaintiff rushed upon him and struck at him and they had a fist-i-cuff and the plaintiff drew his knife, and, from the testimony on both sides, it is plain that there was bad feeling between the parties on that occasion; and the jury, after hearing all this evidence, were warranted in finding that the suit had its origin in the passion and resentment of the plaintiff, and had no foundation in fact, and was malicious. We cannot determine from the evidence which side was telling the truth. We cannot pass on the creditability of the witnesses nor the weight and value to be given to their testimony as these matters were within the province of the jury, and, there being testimony to sustain the finding of the jury, this court will not disturb the verdict.

2. Under the third assignment of error, plaintiff contends that the statute authorizing $100 to be awarded the defendant as attorney's fees in case the proof shows the action maliciously prosecuted is unconstitutional.

The statute, section 500, Comp. Stat. 1921, reads as follows:

"If there be a verdict by jury or finding by the court in favor of the plaintiff, the verdict and judgment shall in no case be less than $100 and costs, and may be for a greater sum if the proof justifies the same. And if there be a verdict in favor of the defendant, and the jury find that the action was malicious or without reasonable provocation, judgment shall be rendered against the plaintiff and in favor of the defendant for his costs, including an attorney's fee of $100."

Plaintiff cites the case of C., R. I. & P. Ry. Co. v. Mashore, 21 Okla. 275, 96 Pac. 630, in which it was held that the statute prior to 1910, providing attorney's fees for plaintiff, where the action was for personal services and for particular classes of persons, was unconstitutional and void, and plaintiff contends the same principle is involved in the instant case. We do not think so. The provisions of the statute for at-

torney's fees, being section 1, chapter 87, paragraph 6915, Wilson's Rev. & Ann. St. Okla. 1903, was declared unconstitutional, being in violation of the Fourteenth Amendment of the Constitution of the United States. This holding of the court was based upon the rule of "equal protection of the laws." It was also held to be class legislation. But this statute, complained of by plaintiff, provided in general for any person who is defendant in a slander suit and also provides in general for any person who is plaintiff in such suit, while the 1903 statute provides only for particular persons. The court held that the statute was unfair in providing an attorney's fees for plaintiff in case of success, but make no provision for defendant for successful defense. The slander statute cannot be charged with class legislation, nor with being unfair to either party. It provides that if the plaintiff wins. the judgment must be fixed for a sum not less than $100, and, if the defendant is maliciously sued he must be awarded $100 as attorney's fees. The Supreme Court of Ohio in construing a statute similar to our 1903 statute and holding it unconstitutional, in the case of Coal Company v. Rosser, at page 12 of 63 Ohio St., 41 N. E. 263, 43 Am. St. Rep. 622, uses the following language:

"We do not think the general assembly has power to discriminate between persons or classes respecting the right to invoke the arbitrament of the courts in the adjustment of their respective rights. The legislative power to compel an unsuccessful party to an action—generally the defendant—to pay an attorney's fee to his opponent has received the attention of a number of courts of last resort, as well as laws which impose as a penalty double damages or similar penalty for some wrongful or negligent act injurious to another. Where the penalty has been imposed for some tortious or negligent act the statute has generally though not always been sustained, but on the contrary, where no wrongful or negligent conduct was imputed to the defeated party any attempt to charge him with a penalty has not prevailed." Citing many cases.

This marks the distinction between the provisions for attorney's fees in the 1903 statute and the slander statute. Under the one no wrongful conduct is imputed, while under the other the penalty is based upon the malicious conduct of the party prosecuting the action.

In the case of Matthews v. Cifers, 94 Okla. 168, 221 Pac. 468, this statute was approved by this court, and $100 attorney's fees in favor of the defendant upheld. the court stating as follows:

"Under section 500, Comp. Stat. 1921, a verdict for defendant for $100 attorney's fees and costs is a finding that the action was malicious or without reasonable provocation on the part of the plaintiff and judgment against the plaintiff, accordingly, is proper."

We think the plaintiff was given a fair trial and substantial justice was meted out to the parties by the trial court, and we therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.