## CARVALHO v. FREGATA et al.

### No. 862.

District Court, D. Massachusetts.

Dec. 17, 1941.

Peter C. Borre and Samuel Meline, both of Boston, Mass., and Joseph S. Rezendes, of Cambridge, Mass., for plaintiff.

Charles A. McCarron and James G. Fay, both of Boston, Mass., for defendant.

SWEENEY, District Judge.

In this action the plaintiff seeks to recover, (1) under the Jones Act, 46 U.S.C.A. § 688, for injuries sustained by reason of the alleged negligence of the defendants, and (2) for cure and maintenance.

### Findings of Fact.

The plaintiff, a carpenter throughout most of his life, was hired as a cook aboard the dragger "Portugal". From the date that he was hired up to the date of his injury the boat was tied up at a wharf in Gloucester, changing her fittings from that of a dragger to a sword fisher. The plaintiff assisted the other members of the crew in outfitting the "Portugal" for sword fishing. There were no cooking duties aboard the dragger while she was tied up, as the men ate and slept ashore.

About May 25, 1939, the plaintiff was ordered by the captain of the boat to purchase an ordinary claw hammer. With an interpreter, he went to a hardware store in Gloucester, and, having been shown several, selected the one that is here in question. It was a "Maydole", and this type is considered to be an excellent hammer generally. It was a reasonably safe appliance for the uses to which it was put.

Prior to June 4, 1939, which was the date when the plaintiff was injured, the hammer in question was used by other members of the crew, and it was used, particularly on one occasion, at least, by a member of the crew for the purpose of hammering pins out of a shell which housed the tackle. Ordinarily, pins in these shells are made to withdraw easily, but, through rusting and corrosion, it is sometimes necessary to use force to eject them. In ejecting the pin a marlinespike was placed against the bottom of the pin and the head of the spike was hit with the hammer. On other occasions the hammer was used for the purpose of exerting force on a cold chisel to cut wiring, and in hammering hoops on a large cask. It is these uses of the hammer which the plaintiff says were improper, and which made the hammer a defective tool.

I am unable to find that the limited use of the hammer in the manners described above made the hammer defective or brittle. It is equally possible that the use of a hammer in the manners described in no way affected it. The use of an instrument, such as a claw hammer, for the purposes set out above seems to be the ordinary use for such an instrument, and the failure to prevent such use is not deemed to be negligence. Nor is the failure of the captain or other officers aboard the boat to inspect the hammer after such use evidence of negligence. Such an examintion would have told them no more than it would have told the user of the hammer. This seems a clearcut case where the application of the simple tool doctrine should be made. At the time of purchase, the tool was selected by the plaintiff, a carpenter, was who familiar with tools of this type. By his training he was in a better position to judge any possible defect in the hammer than the ship's captain or its other officers.

On June 4th, while the plaintiff was using the hammer a chip flew from it, and injured his right eye seriously. While I cannot classify this type of injury as an assumed risk, neither am I convinced that the accident occurred through any act of negligence on the part of the defendants. Under count one, which is based on the alleged negligence of the defendants, the plaintiff cannot recover. He has proven no negligence.

After the above had been dictated, the parties were called before the court for the purpose of deciding the manner in which the claim for cure and maintenance could be best handled. It was orally stipulated by the parties that, if the plaintiff were entitled to cure and maintenance, the sum of $600 would be a fair and just allowance. At the same time, counsel for the plaintiff raised the question, for the first time, whether the plaintiff was in fact an employee covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., so as to entitle him to compensation, or a seaman and member of the crew excluded from that Act by Section 903(a). He orally moved to dismiss the present action on the ground that the evidence disclosed that the plaintiff was a longshoreman, and within the purview of the Longshoremen's and Harbor Workers' Compensation Act.

### Conclusions of Law.

(1) I find and rule that the plaintiff was a seaman and a member of the crew of the dragger "Portugal", and that, as such, he is excluded from the benefits of the Longshoremen's and Harbor Workers' Compensation Act by Section 903(a) thereof. (2) I find and rule that the "Portugal" was

"in navigation" during the time of the plaintiff's employment. See Carumbo v. Cape Cod Steamship Co., 1 Cir., 123 F.2d 991, decided December 3, 1941. (3) I rule that, under the count charging that the plaintiff's injuries were caused by the defendants' negligence, no negligence was proven, and the plaintiff cannot recover on that count. (4) I find and rule that the plaintiff is entitled to recover from the defendants the sum of $600 in accordance with the stipulation of the parties under the count for cure and maintenance.

 The plaintiff's requests for rulings numbered 1, 2, 4, 5 and 11 are granted. They are as follows:

"1. The evidence warrants a finding that the plaintiff was a 'seaman' at the time of his injury.

"2. It is the duty of a shipowner to furnish and maintain proper equipment or appliances free from defects known or which should have been known."

"4. Every person, apprentices excepted, who shall be employed or engaged in any capacity on board a vessel shall be deemed and taken to be a seaman.

"5. It is the duty of the defendant to exercise due diligence in keeping the ship and her appliances in condition."

"11. The simple tool doctrine does not apply where the defect was caused or its cause contributed to by the master."

The plaintiff's requests numbered 3, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, and 17 are denied.

A decree may be prepared in accordance with the above.