JOAQUÍN BERRÍOS

 Acting Secretary

EPIFANIO BERRÍOS, Plaintiff, Appellant and Appellee, *v.* EASTERN SUGAR ASSOCIATES (*A Trust*) and MANUEL A. DEL VALLE, its President, Defendants, Appellees and the former Appellant.

No. 11627. Argued April 17, 1956.—Decided October 15, 1956.

648

*Vicente Géigel Polanco* for plaintiff, appellant and appellee. *Fiddler, González & Nido* and *Carlos J. Faure* for defendants, appellees, and appellant. *José Trías Monge, Attorney General,* and *Edgar S. Belaval, Assistant Attorney General,* for the Commonwealth of Puerto Rico, intervener.

MR. JUSTICE MARRERO delivered the opinion of the Court.

This is a suit for a claim for wages brought by Epifanio Berríos against Eastern Sugar Associates. The answer to the complaint denied the essential allegations and alleged certain special defenses. The case went to trial, and was submitted on the basis of a stipulation of facts and on oral and documentary evidence offered by both parties. The lower court rendered judgment sustaining the complaint and ordering the defendant to pay to plaintiff the total sum of $1,890.60, plus costs. In the course of the opinion, the court concluded that the laborer's claim should be divided into three phases: the period commencing on June 3, 1943 and ending on July 25, 1947, when plaintiff ceased in his job as cook for the defendant; second, the period comprised between August 15, 1947 and March 30, 1949, during which plaintiff worked for the defendant as a seaman; and third, the period comprised between March 30, 1949, when plaintiff resumed work under a contract entered into on March 21, 1949, and June 1952; that, as respects the first period, namely, from June 3, 1943 to July 25, 1947, when the laborer ceased in his job as a cook and received the sum of $51.70 by check, as final liquidation of the work performed by him up to the latter date, the claim had prescribed under the provisions of § 1867 of the Civil Code, 31 L.P.R.A. § 5297;[1] that, as respects the second period, namely, from August 15, 1947 to March 30, 1949, the laborer was, in its opinion, entitled to compensation for extra hours worked during the said

---

[1] The complaint was filed on August 18, 1952.

period, pursuant to Mandatory Decree No. 3; that said period covered one year, seven months, and fifteen days, specifying the weeks worked by Berríos during the dead season and those worked during the grinding season; that, as a question of law, it concluded that, according to the Decree, the extra hours worked during the grinding season in excess of 48 hours a week should be paid at double rate, and that the extra hours worked during the dead season in excess of 40 hours a week should be paid at time and a half; and that, as respects the third period, namely, from March 30, 1949 to June 25, 1952, which is the period established under the contract entered into by the parties on March 21, 1949, it was of the opinion that the contract was a *Belo* type contract—*Walling* v. *Belo Corp.*, 316 U. S. 624, 86 L. Ed. 1716—indicating that there was "no doubt that the transportation of sugar cane from the Island of Vieques to the port of Humacao and vice versa entails a number of incidents, which render such work completely irregular, and that it is subject to the cutting of the sugar cane and loading on barges at the port of Vieques to be transported to the port of Humacao; that the ocean currents be favorable while en route to that port, otherwise the voyage is tedious and it takes much longer to transport it; and unless all these factors are properly reckoned, which is very difficult, plaintiff finds himself on the craft with nothing to do." Both parties appealed.

We turn to discuss first the errors alleged by plaintiff in the order assigned.

I

■ The lower court held, as has been seen, that the contract-letter which the employer wrote to plaintiff on June 21, 1949, is a valid *Belo* type contract. Plaintiff maintains that in so holding the court committed error. In that letter, which appears in the record as Exhibit 3 of the defendant, the latter informs plaintiff that as of that date (March 21, 1949) his occupation will be that of seaman of the craft;

that his basic compensation rate will be $0.40 per hour; that if his services were used, he would work not less than 63 hours a week during six days a week; that all time worked in excess of 48 hours a week or 8 hours a day would be paid at double the basic wage rate stipulated; that all time worked on the day of rest would also be paid at double the basic rate; and that his compensation in any one week worked by him would never be less than $31.20.

In the case of *Olazagasti* v. *Eastern Sugar Associates et al.*, *ante*, p. 88, we made a résumé of the doctrine announced by this Court in *Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288, on the *Belo* type cases. There we said that "This contract is one which, if valid, enables the employer to pay a uniform weekly wage which includes overtime pay for workweeks of variable lengths. To be valid, it must comply with the following requirements: the regular rate per hour stipulated in the contract must be equal to or greater than that fixed by the law. It must provide for the payment of time and a half for hours worked in excess of 40 hours a week. It must fix a guaranteed weekly wage. If the hourly rate stipulated in the contract is such that it does not reasonably determine the weekly wages which it proposes to pay for regular as well as for extra hours currently worked, such hourly rate would be fictitious and void. The nature of the employee's work must require irregular work hours, and the number of hours actually worked by the employee must fluctuate from week to week. The contract must be legal in all respects. The extra compensation provided therein must be actually paid and this must be done promptly. The validity of the contract will be judged by the employee's work record and not merely by the bare terms of the contract."

The trial court held, as already stated, that the contract in question was valid. However, it concluded that, "since Mandatory Decree No. 3 is applicable to this case, and it fixes at .44-¾ the minimum daily wage per hour to be paid

to the laborer under subd. (*g*), established for the industrial phase of the sugar industry, the minimum wage of .44-¾ per hour is the applicable rate, and plaintiff has the right to demand payment for the extra hours on the basis of such wage. . . ."

We need not discuss the numerous questions raised by appellant in his brief to show that the error assigned was committed. We have already stated that in the *Peña* and *Olazagasti* cases, *supra*, it was held that, for a *Belo* type contract to be valid, the basic salary stipulated in the contract must be equal to or greater than the legal minimum rate. Since in the present case the basic rate stipulated in the contract was 40 cents per hour and the legal minimum rate under Mandatory Decree No. 3—applicable to this case—is 44-¾ cents per hour, that requirement was not met.[2] This requirement is based, substantially, on § 15 of Act No. 8 of April 5, 1941 (Sess. Laws, p. 302), as amended by Act No. 451 of May 14, 1947 (Sess. Laws, pp. 950, 964) —29 L.P.R.A. § 226—which provides that "Any collective

---

[2] Mandatory Decree No. 3, which was issued by the Minimum Wage Board on February 27, 1943, to take effect 60 days after it was promulgated, provides in par. C-3(*b*):

"*Industrial Phase:* The transportation of the cane if performed by the sugar central, the weighing, the preparation and grinding of the cane, the elaboration, handling, packing, weighing and warehousing of sugar and any other operation related to the industrial phase of the manufacture of sugar which takes place after the cane is weighed in the scale of the central and before the sugar is removed from the warehouse of the central; *provided, that the transportation of sugar, if performed by the centrals themselves, shall be considered as part of the industrial phase.*"

It further provides in par. B(1) (Industrial Phase) that:

"Every employer who employs workers in the industrial phase of the Sugar Industry shall pay said workers, at least, at the following wage rates per hour in the different occupations or types of work detailed below:

"(a) All kinds of work except as classified below . . . . . .33

" . . . . . . . .

"(g) Carpenters, masons, blacksmiths, lathemen, welders, and *other skilled laborers* . . . . . . . . . . . . . . . . .44 ¾."

(Italics ours.)

agreement, award, or other labor contract made with workers, by virtue of which any employee may agree to accept a wage lower than that fixed in the mandatory decree of the Minimum Wage Board shall be invalid." [3] *Cf. Sierra, Commissioner* v. *San Miguel,* 70 P.R.R. 573. In view of the foregoing, we conclude that the contract in question was a frustrated *Belo* type contract, as being contrary to law. Consequently, the computation of the basic pay rate per hour shall be made by dividing the laborer's weekly salary by the number of hours in the regular workweek. See *Peña* v. *Eastern Sugar, supra.* The result will be the regular hourly rate to be paid to plaintiff.

## II

The lower court also held that in the industrial phase of the sugar industry of Puerto Rico, 48 hours constitute the regular workweek during the grinding season, and that the regular hours worked between 40 and 48 hours a week need not be paid (during such period) at the rate of time and a half the basic wage rate. In this connection, the lower court stated that "as a question of law, according to Mandatory Decree No. 3, during the grinding season in the industrial phase no employer shall employ any laborer for more than eight hours in any 24-hour period, and since there are six working days in the workweek, the latter consists of 48 hours of work; and during the dead season the workweek in the industrial phase consists of 40 hours of work a week . . ."

---

[3] Section 25 of Act No. 8 of 1941, as amended by Act No. 451 of 1947 (at p. 968), further provides that: "Every laborer or employee who receives for his work a compensation different from or lower than that fixed for any industry, business, or occupation, in accordance with this Act or any decree, regulation, resolution, or order of the board, shall be entitled to recover through a civil action the unpaid difference up to the total amount of the compensation to which he is entitled, plus an amount equal to the unpaid amount, as an additional penalty, besides the costs, expenses, and attorney's fees in the proceedings, said fees to be a reasonable amount in no case less than fifty (50) dollars, all this irrespective of any agreement to the contrary." See *Caguas Bus Line* v. *Comm'r of Labor,* 73 P.R.R. 690, 696.

It cannot be gainsaid that the sugar industry, the industry in which the defendant is engaged, is covered by the Federal Fair Labor Standards Act. 29 U.S.C.A. § 201 *et seq.* See *Peña* v. *Eastern Sugar Associates, supra.* However, this Act clearly and expressly provides in its § 213, essentially, that:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to . . . (3) any employee employed *as a seaman* . . . ." (Italics ours.)[4]

On the other hand, § 5 of Act No. 379 of May 15, 1948 (Sess. Laws, pp. 1254, 1258) —29 L.P.R.A. § 274—provides that:

"Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours; *Provided, however,* That every employer in

---

[4] Sections 206 and 207, as amended, of the Federal Fair Labor Standards Act, read in their pertinent part as follows:

"Section 206. Minimum wages; effective date.—

"(a) . . . . . . . .

"(1) not less than $1 an hour;

"(2) if such employee is a home worker in Puerto Rico or the Virgin Islands, not less than the minimum piece rate prescribed by regulation or order; or, if no such minimum piece rate is in effect, any piece rate adopted by such employer which shall yield, to the proportion or class of employees prescribed by regulation or order, not less than the applicable minimum hourly wage rate. . . .

"Section 207. (a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

". . . . . . . .

"(c) In the case of an employer engaged in the first processing of milk, buttermilk, whey, skimmed milk, or cream into dairy products . . . *or in the processing* of sugar beets, sugar-beet molasses, *sugarcane . . . into sugar* (but not refined sugar) or into sirup, the provisions of subsection (a) of this section shall not apply to his employees in any place of employment where he is so engaged . . . ." (Italics ours.)

any industry in Puerto Rico, covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in excess of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed. . . ."

It is necessary, therefore, to decide first whether Berríos is a seaman and, if he is—since he is not covered by the Federal Fair Labor Standards Act in certain aspects—we must determine the scope of the *Proviso* of § 5 of Act No. 379 of 1948, copied above.

The contract entered into between Berríos and the defendant clearly recites that his occupation will be that of a seaman. Since the name is not important—*Roosevelt, Governor* v. *District Court*, 42 P.R.R. 803, 805—we must determine the nature of the work performed by him during the third period already mentioned, in order to decide whether he may be regarded as a "seaman." According to his own testimony in this connection, he worked as a seaman in a vessel which towed empty barges from Punta Santiago (Playa de Humacao) to Vieques, and after being loaded with sugar cane to be ground in Central Pasto Viejo, owned by the defendant, he towed them from Vieques to Punta Santiago; and that the vessel which he operated also towed barges loaded with sugar cane from the pier in Punta Santiago to the boat which received them, which was anchored in that port.[5] As stated by the United States Court of Appeals for the Fifth Circuit in *Gale* v. *Union Bag & Paper Corp.*, 116 F. 2d 27:

---

[5] During the dead season he also repaired, calked, and painted defendant's seacraft used in above activities.

"The word 'seaman' has a plain, ordinary meaning universally applied. Whether a person is a seaman depends upon the character of his duties. If they are maritime in character and rendered on a vessel in commerce, in navigable waters, he is a seaman," citing the case of *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50, 47 S.Ct. 19, 71 L. Ed. 157.

See, also, *Helena Glendale Ferry Co.* v. *Walling*, 132 F. 2d 616, 619; *Gahagan Const. Corporation* v. *Armao*, 165 F. 2d 301, 305; *Jordan* v. *American Oil Co.*, 51 F. Supp. 77, 79. *Cf. Carvalho* v. *Fregata*, 42 F. Supp. 404; *Anderson* v. *Manhattan Lighterage Corporation*, 148 F. 2d 971. According to this definition, there is no question that Berríos was a seaman. Consequently, by virtue of its very context he is excluded from the provisions of the Fair Labor Standards Act cited above.

This exclusion, however, does not operate to relieve petitioner from the effects of the local legislation. Construing a question similar to that involved in this case, we stated in *Olazagasti* v. *Eastern Sugar Associates, supra:*

"The plaintiff laborer in this case is a mechanic whose duties consisted in repairing and maintaining in working condition the mill of defendant's sugar factory. . . . As such, he is within the exemption established by § 7(c) of the Fair Labor Standards Act. 29 U.S.C.A. § 207(c). *Maneja et al.* v. *Waialua Agricultural Company*, 349 U.S. 254.

". . . . . . . .

"The question remains, however, whether our Legislature, in adopting § 5 of Act No. 379, did in fact provide for overtime pay at the rate of time and a half after 40 hours during the grinding season for employees who, like plaintiff, would otherwise be exempt during the grinding season from the overtime provisions of the Federal Act by virtue of § 7(c) of the latter.

"As we pointed out in footnote 10, p. 304, of the *Peña* case, one way to agree with the defendant is for us in effect to read into the *Provided* clause of § 5 the phrase, 'where overtime pay is required by Federal law.' This would, of course, mean that we were not following the literal language of the statute. But if we are satisfied that the Legislature did not intend its language to be read literally, it is our duty, wherever the

language lends itself fairly to such an interpretation, to read it in accordance with the intention of the Legislature. *Borinquen Furniture, Inc.* v. *District Court,* 78 P.R.R. 858; *Colonos de Caña de Santa Juana, Inc.* v. *Sugar Board,* 77 P.R.R. 371.

"The *Provided* clause of § 5 of Act No. 379 shows on its face that the Legislature was endeavoring to write the Federal formula for overtime pay which was based on a workweek into the local law, insofar as the latter applied to industries subject to the Fair Labor Standards Act. This view is fortified by the provision that *only* time and a half must be paid, whereas local industries under other sections of the Act must pay double time after 8 hours a day. The use of the word 'only' makes it seem unlikely that the Legislature intended to expand the employer's liability beyond that provided in the Federal Act; yet that would be the effect of reading the *Provided* clause as excluding the seasonal exemption provided in § 7(c) of the Federal Act. In addition, the legislative history of Act No. 379 shows that the *Provided* clause was inserted 'to adjust' the local statute to the Federal law. . . .

" . . . . . . . .

"In this context, 'to conform' could mean only that the *Provided* clause of § 5 of Act No. 379 was providing substantially the same overtime pay for a workweek as the Federal Act, including exemption therefrom during the grinding season as provided in § 7(c).

"This intention of the Legislature was not fully accomplished. The terms of § 7 and the last sentence of § 5 of our law require the use of 40 hours as the regular workweek—rather than the hours actually worked as provided in the Federal law—in calculating the overtime pay of an employee under a frustrated *Belo* contract. This results in giving such an employee more overtime pay under Act No. 379 than he would receive under the Federal Act. *Peña* v. *Eastern Sugar Associates, supra.* It must be admitted that the provision in Act No. 379 of a more beneficial method of calculating overtime pay for a frustrated *Belo* contract than is found in the Fair Labor Standards Act weakens the argument that the Legislature intended in the *Provided* clause of § 5 to restate not only the Federal formula for time and a half after 40 hours a week but also the Federal seasonal exemption from such overtime pay embodied in § 7(c) of the Federal Act. Nevertheless, we think a strong argument can still be made—from (1) the language of the *Provided* clause,

(2) the use of the word 'only,' and (3) its legislative history—for the proposition that the *Provided* clause, standing alone, can be read as retaining rather than in effect eliminating the seasonal exemption of § 7(c) of the Federal Act from overtime pay insofar as a workweek is concerned. But we need not rely on the *Provided* clause of § 5 alone to reach this result. Section 22 of Act No. 379 provides that 'all the terms' of the Minimum Wage Act and the mandatory decrees promulgated pursuant thereto 'shall remain in full force and effect.' In interpreting § 22 we have held that, with one exception, it preserves the provisions of all existing decrees, irrespective of whether they contain provisions superior or inferior to those found in Act No. 379. *Caguas Bus Line* v. *Comm'r of Labor*, 73 P.R.R. 690. Paragraph B(2)(*b*) of Mandatory Decree No. 3 provides that:

> " 'No employer shall employ a worker in the industrial phase of the Sugar Industry during the so-called "dead season," for more than forty (40) hours in any workweek, unless such worker receives compensation for the hours worked in excess of the said forty (40) hours at a rate one and one half times the minimum rate applicable in accordance with the scale established in Section B-1 of this decree.'

"When this decree was approved in February 1943, § 7(c) of the Federal Act, as we have seen, exempted certain employees, like the plaintiff, from the overtime provisions of the Federal Act during the grinding season. It is therefore obvious that, by confining the overtime provision of time and a half after 40 hours a week in Par. B(2)(*b*) to the dead season, Mandatory Decree No. 3 was in effect 'adopting' the Federal seasonal exemption as a matter of local law. And when § 22 of Act No. 379 preserved all existing decrees, the implied provision of an exemption from overtime pay based on a workweek during the grinding season—as well as the specific provision of time and a half after 40 hours during the dead season—remained in effect under the rule laid down in the *Caguas Bus Line,* case, *supra.*

"We are aware that the foregoing argument—that the seasonal exemption impliedly found in Decree No. 3 was preserved by § 22 of Act No. 379—would be stronger if the exemption had been specifically rather than impliedly stated in

Par. B(2)(b). Nevertheless, we think that when this reasoning is added to our previous discussion of the intention of the Legislature in enacting the *Provided* clause of § 5, the conclusion is sound that in enacting Act No. 379 the Legislature did not intend to give employees overtime pay to which they were not entitled under § 7(c) of the Federal Act. . . ."

In view of the foregoing, we conclude that 40 hours constituted plaintiff's regular workweek during the third period involved in this case; that during the so-called "dead season" the hours worked by him in excess of 40 hours a week must be paid at the rate of time and a half, and that during the grinding season the hours worked in excess of 40 must be paid at the regular rate.[6] The second error assigned by plaintiff was therefore committed.

## III

 Did plaintiff's employment terminate in July 1947? If it did, he had three years counted from that date

---

[6] The foregoing is applicable only to the third period—March 30, 1949 to June 25, 1952—covered by the contract entered into by the parties, which we have held to be a frustrated *Belo* type contract. Mandatory Decree No. 3 and Act No. 379 of 1948 are applicable to the second period—August 15, 1947 to March 30, 1949. During the dead season covered by the second period, Berríos' regular workweek shall be computed on the basis of 40 hours and the hours in excess of 40 at the rate of time and a half the minimum rate. During the grinding season prior to the effectiveness of Act No. 379 of 1948, the laborer's regular workweek shall be computed on the basis of 48 hours. See par. B-2(a) of Mandatory Decree No. 3.

Our decision in *Ignacio López González* v. *Eastern Sugar Associates, etc.*, of April 2, 1956 (reconsideration denied on June 19 of that year), in which we applied to a period prior to the effective date of Act No. 379 of 1948, the formula of dividing by 40 hours the weekly compensation during the grinding season in order to determine the regular rate, and in which it was further held that claimant was entitled to time and a half for the hours worked in excess of 40 a week during the grinding season, was based on the contracts entered into between the parties.

According to the other legal provisions, all hours worked by plaintiff in excess of 48 a week, 8 hours a day, or on the day of rest must be paid at double rate. See par. B-2(a) of Mandatory Decree No. 3, Act No. 379 of 1948, and Act No. 289 of 1946 (Sess. Laws, p. 682). *Cf.* Art. II, § 16, of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A. Vol. I, p. 183.

to exercise an action to recover the wages due until that date. Section 1867 of the Civil Code.[7] If his employment ceased, the first part of the claim would have prescribed, since the complaint was filed on August 18, 1952. If it did not terminate, for the reason that it was merely an interruption during the reorganization of the service in which plaintiff was employed, his cause of action as to that period would still be alive.

The evidence before the trial court was conflicting. It was established that prior to July 1947, plaintiff worked as a cook on a barge. He resumed work with defendant as a seaman. On July 28, 1947, he was paid by check on which are written the words "Final Liquidation 2–Weeks Salary." In this connection, plaintiff himself testified as follows:

"A.— . . . In 1947, I was out of work 2 or 3 weeks, and after 2 or 3 weeks while the service was being reorganized and I took charge of the vessel."

Yet, further on he said:

"Q.—On or about July 28, 1947, when you ceased in your employment . . .?
"A.—*Yes, sir, I ceased in my job.*
"Q. *You ceased in your employment?*
"A.—*Yes, sir.*
" . . . . . . . .
"Q.—But you do remember *having ceased?*
"A.—*Yes, sir.*

---

[7] Section 1867 of the Civil Code, 1930 ed., 31 L.P.R.A. § 5297, provides in its pertinent part:
 "Actions for the fulfilment of the following obligations shall prescribe in three years:
 " . . . . . . . .
 "3. For the payment of mechanics, servants and laborers the amount due for their services, and for the supplies or disbursements they may have incurred with regard to the same.
 " . . . . . . . .
 "The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

"Q.—Were you out 2 or 3 weeks, or one month?

"A.—Two or three weeks.

" . . . . . . .

"Q.—You were not discharged; they didn't discharge you on that occasion?

"A.—*I was laid off on that occasion, in 1947.*

"Q.—*Were you laid off?*

"A.—*Yes, sir.*" (Italics ours.)

On this evidence the trial court concluded that, as a question of fact, plaintiff's employment terminated and that thereafter he resumed work in a new activity. In the absence of manifest error—which was not committed in this case—this finding shall not be disturbed. Relying on this doctrine and on that enunciated in *Muñoz* v. *District Court*, 63 P.R.R. 226, and *Jiménez* v. *District Court*, 65 P.R.R. 35,[8] that court correctly held that plaintiff's cause of action had prescribed as to the period prior to July 1947.

## IV

█ The fourth error assigned by plaintiff could have been jointly discussed with the second, which, as already stated, was committed. The lower court concluded that the basic compensation rate was $0.4475 per hour during the period between August 15, 1947 and March 20, 1949, and during the period between March 21, 1949 and June 25, 1952. This is alleged to be an error. Also, that it erred in

---

[8] In the first of these cases we held that:

"The 3-year limitation period fixed by § 1867 of the Civil Code for actions by laborers to recover from their employers the amounts due for their services, begins to run from the time when the laborers ceased to render said services, and not from the time set for the payment of their wages."

And in the second that:

"An employee in a year-round industry who leaves his employment for months or years without offering any explanation therefor, ceases at that time to render services to his employer within the meaning of § 1867 of the Civil Code, for purposes of the limitation period for any claim for his services rendered prior to that date, even though later he is rehired by the same employer."

computing the compensation which the employer failed to pay to plaintiff for extra hours worked in the entire course of employment. This error was committed.

In *Peña* v. *Eastern Sugar Associates, supra,* we stated at p. 303 that, although "the Federal rule is that where a *Belo* contract fails the 'regular rate' per hour is determined by dividing the weekly salary by the total number of hours actually worked during that particular week . . . § 7 . . . of Act No. 379 changes this rule, to the benefit of the employee, by providing that under these circumstances the divisor is the number of hours constituting the regular workweek." [9] In consonance with this holding, in order to determine the extra compensation to which plaintiff is entitled for the extra hours worked by him, it is necessary to divide the weekly salary stipulated in the contracts by the number of hours constituting the regular week, both during the dead and the grinding season.

### V

The lower court did not impose attorney's fees on the defendants. Plaintiff's contention is that pursuant to the provisions of § 13 of Act No. 379 of 1948, *supra,* 29 L.P.R.A. § 282, it should have done so. This section provides:

"Any employee who receives a compensation less than that fixed by sections 271–288 of this title for regular hours and extra hours of work shall be entitled to recover from his employer, through civil action, the sums unpaid, plus an equal sum as liquidation of damages, *in addition to the costs, expenses, and attorney's fees of the proceeding."* (Italics ours.)

The context of § 13, *supra,* is crystal-clear. This Court has held that the award of liquidated damages is mandatory. *Tulier* v. *Land Authority,* 70 P.R.R. 249; *Peña* v. *Eastern*

---

[9] Section 7 of Act No. 379 of 1948, at p. 1260—29 L.P.R.A. § 276—provides that "If an employee works for a weekly wage, the wage stipulated shall cover solely the payment of the regular working hours during each week."

*Sugar Associates, supra.* So is the award of attorney's fees in cases of this nature. See, also, § 25 of Act No. 8 of 1941, at p. 324, as amended by Act No. 451 of 1947, at p. 968, and § 2 of Act No. 402 of 1950 (Sess. Laws, p. 954).[10]

The defendant has consistently maintained, both in the lower court and in the briefs filed in this Court, that the provision in question is unconstitutional, according to which, if the laborer is successful, the court is bound to impose attorney's fees on the defendant, while, on the contrary, if the defendant is successful it has no right to an award of attorney's fees.[11] In support of its contention, the defendant cites a great number of cases, which we have read carefully and which we believe are distinguishable or inapplicable.[12] We need not analyze each and every case in the

---

[10] Section 25 of Act No. 8 of 1941, at p. 324, as amended by Act No. 451 of 1947, at p. 968, reads as follows:

"Every laborer or employee who receives for his work a compensation different from or lower than that fixed for any industry, business, or occupation, in accordance with this Act or any decree, regulation, resolution, or order of the board, shall be entitled to recover through a civil action the unpaid difference . . . besides the costs, expenses, and attorney's fees in the proceedings, said fees to be a reasonable amount in no case less than fifty (50) dollars, all this irrespective of any agreement to the contrary."

And § 2 of Act No. 402 of 1950, at p. 956, provides that:

"In every case filed in the courts of Puerto Rico by a workman or an employee in which any right or sum of money is claimed for services rendered to the employer of said workmen or employees, and in which the claim is granted wholly or in part, the attorney's fees shall be levied on the employer if the attorney is not one of the attorneys of the Department of Labor. . . ."

[11] Pursuant to the provisions of Act No. 451 of May 14, 1952 (p. 918), on February 1, 1956, we issued an order granting to the Attorney General a term of 30 days to intervene as a party to the action on behalf of the Commonwealth of Puerto Rico. In reply to this order, the Attorney General appeared by brief in support of the validity of the provision bearing on the award of attorney's fees on the defendant, contained in the afore-cited laws.

[12] In support of its contention, the defendant cites the cases of *Chicago R. I. & P. Ry. Co.* v. *Mashore* (1908), 21 Okla. 275, 96 Pac. 630; *Oligschlager* v. *Stephenson* (1909), 24 Okla. 760, 104 Pac. 345; *Coal Company* v. *Rosser* (1895), 53 Ohio 12, 41 N. E. 263; *Hunter* v. *Flowers* (1949), 43 So. 2d 435; and *Gulf C. & S. F. R. Co.* v. *Ellis* (1897), 165 U. S. 150, 41 L. Ed. 666.

course of this opinion. The question has already been decided by this Court—*Feliciano* v. *P. R. Express Co.*, 67 P.R.R. 351—as well as by the United States Supreme Court. In *Missouri, Kansas & Texas Ry.* v. *Cade*, 233 U. S. 642, 58 L. Ed. 1135 (1914), cited in the *Feliciano* case *supra*, an action was brought before the Justice Court to recover the sum of $10.75 of wages due, with an attorney's fee of $9. The fee was claimed by virtue of an act approved March 13, 1909, by the State of Texas. Defendant specially excepted to this part of the claim on the ground that the act was invalid as constituting a burden upon interstate commerce, contrary to the Commerce Clause of the Federal Constitution, and the Act to Regulate Commerce and amendments thereof, and as violating the "equal protection" and "due process" clauses of the Fourteenth Amendment. Notwithstanding defendant's contentions, judgment was rendered in favor of plaintiff for the amount claimed, including the attorney's fee. Under the civil practice of that state, no appeal lies from a decision of the Justice Court to a higher court in a case involving less than $20. The case went to the United States Supreme Court by writ of error for a review of the federal questions involved. In the course of the opinion, the Supreme Court stated as follows:

"It is insisted that the benefits of the act are conferred upon natural persons only; but this we cannot concede, in the absence of a decision by the courts of the State giving to it a construction thus limited. [Citation.] And besides, plaintiff in error is not in a position to assail the legislation on the ground that corporation-plaintiffs are not included within its benefits. [Citation.]

"If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the 'equal protection' clause. This is not a discrimination between different citizens or classes of citizens, since members of any and every class may either sue or be sued. *Actor* and *reus* differ in their respective attitudes towards a litigation; the former has the burden of seeking the

proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorney's fee as a part of the costs. [Citations.]

"Even were the statute to be considered as imposing a penalty upon unsuccessful defendants in cases within its sweep, such penalty is obviously imposed as an incentive to prompt settlement of small but well-founded claims, and as a deterrent of groundless defenses, which are the more oppressive where the amount involved is small. . . .

"But we think it is not correct to consider this statute as imposing a penalty. The allowance is confined to a reasonable attorney's fee, not exceeding twenty dollars, where an attorney is actually employed; the amount to be determined by the court or jury trying the case. Manifestly, the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable as 'costs of suit.' So far as it goes, it imposes only compensatory damages upon a defendant who, in the judgment of the legislature, unreasonably delays and resists payment of a just demand. The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other, it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary. The allowance of ordinary costs of suit to the prevailing party rests upon the same principle. [Citation.] Numerous cases in the state courts have sustained similar legislation. [Citations.] If a reasonable penalty may be imposed for failure to satisfy a demand found to be just, it follows *a fortiori* that costs and an attorney's fee may be. [Citations.]

"For these reasons, it seems to us that the statute in question is not repugnant to either the 'equal protection' or the 'due process' clauses of the Fourteenth Amendment."

This same principle was already latent in other cases preceding the *Cade* case, decided by the United States Supreme Court, as may be seen from an examination of the opinions rendered in *Atchison, Topeka & Santa Fe Railroad Co.* v. *Matthews* (1899), 174 U. S. 96; and *Fidelity Mutual Life Association* v. *Mettler* (1902), 185 U. S. 308. The

same principle is enunciated in *Chicago, B. & Q. R. Co. et al.* v. *Feintuch et al.* (1911), 191 Fed. 482. The doctrine in the *Cade* case has been likewise applied in other later cases. See *Missouri, Kansas and Texas Ry Co.* v. *Harris* (1914), 234 U. S. 412; *Meeker & Co.* v. *Lehigh Valley Railroad Co.* (1915), 236 U. S. 412; and *Dohany* v. *Rogers et al.* (1930), 281 U. S. 362. We fully subscribe to the holding in the *Cade* case *supra,* and succeeding cases. Our conclusion is therefore that the provision contained in the three laws mentioned is constitutional. Consequently, this error was committed. By express provision of the law, defendant should have been ordered to pay attorney's fees. We believe that the sum of $1,500 is reasonable.

The appeal of plaintiff is thus disposed of. We next turn to discuss the errors assigned by the defendant.

## VI

The first is that "the lower court erred in holding that Berríos was entitled to compensation under the provisions of Mandatory Decree No. 3, and in the method of computing the basic salary rate thereunder." All that has been said above in connection with the second and fourth errors assigned by plaintiff applies here. We need not repeat the reasons set forth therein.

## VII

The second and last error assigned by the defendant is that "the lower court erred in not holding that Berríos' claims subsequent to July 25, 1947, had prescribed under the Portal to Portal Act and/or § 1867 of the Civil Code of Puerto Rico."

Plaintiff's claim is based on local statutes. There is not the least doubt about it. The Portal to Portal Act is not therefore applicable. Section 1867 of the Civil Code, 1930 ed.—31 L.P.R.A. § 5297—provides, substantially, that actions for the fulfilment of the obligation to pay to mechanics, servants, and laborers the amounts due for their services

shall prescribe in three years, and that the time for the prescription of such action shall be counted from the time the services ceased to be rendered. Since in this case Berríos worked for the defendant until June 1952, and his complaint was filed on August 18 of that year, his cause of action had not prescribed as respects the second and third periods above mentioned. See *Jiménez* v. *District Court, supra*, and *Muñoz* v. *District Court, supra*, as well as *Olazagasti* v. *Eastern Sugar Associates, supra*.

The judgment will be modified in accordance with the terms of this opinion and, as thus modified, it will be affirmed.

Mr. Justice Sifre did not participate herein.

